**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 01-31171**

---

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**JOSEPH L. SOILEAU,**

**Defendant-Appellant.**

---

Appeal from the United States District Court
For the Western District of Louisiana

---

October 11, 2002

Before JOLLY, DeMOSS, and PARKER, Circuit Judges.

DeMOSS, Circuit Judge:

Joseph Soileau was charged by bill of information with wire fraud, a violation of 18 U.S.C. §§ 1343 and 2. The bill alleged that Soileau defrauded Medicare by billing for services provided by satellite clinics which were not Medicare certified. Soileau pled guilty to one count of the charge and was sentenced to 60 months imprisonment, three years supervised release, $1,438,236 in restitution, a $10,000 fine, and a $100 special assessment.

Soileau now appeals the district court's decision to apply a four-level enhancement to his offense level pursuant to U.S.S.G. § 2F1.1(b)(8)(B).

**BACKGROUND**

Joseph L. Soileau was the sole owner and shareholder of Lake Charles Hospital Management ("LCHM") and also the chief executive officer of South Cameron Memorial Hospital ("SCMH") from November of 1996 through June of 1999. Under Soileau's direction, LCHM supervised and managed SCMH and 34 satellite clinics. In August of 1998, Soileau used SCMH's Medicare provider number and began billing Medicare for the services provided by the satellite clinics, despite the fact that these clinics were not Medicare certified. Though Soileau knew this, he continued to bill Medicare anyway. After SCMH received payment from Medicare, Soileau's business, LCHM, would submit invoices to SCMH requesting payment for out-patient services provided by the satellite clinics. LCHM received $1,438,236 from SCMH for these out-patient services via wire transfers.

Soileau was charged with, and pled guilty to, wire fraud in violation of 18 U.S.C. § 1343. During the sentencing, the district court increased Soileau's offense level by four levels pursuant to U.S.S.G. § 2F1.1(b)(8)(B). That guideline allows for an enhancement from the base level if the offense "affected a

financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense . . . ." U.S.S.G. § 2F1.1(b)(8)(B) (2000). In applying this enhancement, the district court construed application note 19 to § 2F1.1 to find that Medicare, although not listed, was a "financial institution" for the purposes of § 2F1.1. The district court also found that Soileau had personally derived more than $1,000,000 in gross receipts from the offense. Soileau objected to both the inclusion of Medicare as a "financial institution" and to the finding that he had personally derived more than $1,000,000 in gross receipts. The district court overruled both objections and found the four-level enhancement appropriate.

On appeal, Soileau argues that Medicare is not a "financial institution" covered under § 2F1.1(b)(8)(B). The government argues that, although not specifically listed in the application note defining the term "financial institution" and despite the fact that there appear to be no cases in which this guideline enhancement has been applied to encompass offenses affecting Medicare, the definition is broad, includes things similar to Medicare and, therefore, can be utilized in this case.

**DISCUSSION**

Did the district court err in concluding that Medicare is a "financial institution" for the purposes of U.S.S.G. § 2F1.1(b)(8)(B)?

3

This Court is faced with determining the meaning of "financial institution" under a provision of the Sentencing Guidelines, which is a question of law. Therefore, we review the issue *de novo*. **United States v. Izydore**, 167 F.3d 213, 223 (5th Cir. 1999). As Soileau was sentenced on September 17, 2001, the effective guideline is U.S.S.G. § 2F1.1(b)(8)(B)(2000).[1] **United States v. Norris**, 159 F.3d 926, 928 n.1 (5th Cir. 1998) (utilizing the guideline in effect on the date of a defendant's sentencing). In this case the guideline does not list Medicare as a "financial institution," and therefore it is necessary to understand what Congress directed the Commission to do and what the Commission then did when it promulgated U.S.S.G. § 2F1.1(b)(8)(B). **United States v. Lightbourn**, 115 F.3d 291, 292-93 (5th Cir. 1997) (noting that if the Commission was misreading a Congressional directive rather than exercising independent judgment it acted "beyond the scope of [its] authority."). To make this determination we must investigate the historical background of U.S.S.G. § 2F1.1(b)(8)(B).

In the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Congress directed the Sentencing Commission to provide "for a substantial period of incarceration for a violation of, or a conspiracy to violate, section 215, 656, 657, 1005, 1006, 1007, 1014, 1341, 1343, or 1344

---

[1] This section has been deleted and consolidated with § 2B1.1. *See* U.S.S.G. § 2B1.1 (2001).

of title 18, Unites States Code, that substantially jeopardizes the safety and soundness of a federally insured financial institution." Pub. L. No. 101-73 § 961(m), 103 Stat. 501. Under the FIRREA directive, the Commission created what was in 2000 known as § 2F1.1(b)(8)(A) and gave the term "financial institution" a very broad definition. *See* U.S.S.G. § 2F1.1, comment. (n.19) (2000) (defining "financial institution [as] any institution described in 18 U.S.C. §§ 20, 656, 657, 1005-1007, and 1014; any state or foreign bank, trust company, credit union, insurance company, investment company, mutual fund, savings (building and loan) association, union or employee pension fund; any health, medical or hospital insurance association; brokers and dealers registered, or required to be registered, with the Securities and Exchange Commission; futures commodity merchants and commodity pool operators registered, or required to be registered, with the Commodity Futures Trading Commission; and any similar entity, whether or not insured by the federal government"). The Commission noted in the background note to § 2F1.1 that, "Subsection (b)(8)(A) implements, **in a broader form**, the instruction to the Commission in section 961(m) of Public Law 101-73," apparently attempting to indicate that the Commission was adopting a much broader definition than encompassed by the Congressional directive. U.S.S.G. § 2F.1.1, comment. (backg'd.) (2000) (emphasis added).

The following year, Congress gave the Commission another directive to amend the guidelines to "increase[] penalties in major bank crime cases."  Pub. L. 101-647 § 2507(a), 104 Stat. 4862.  In this law, known as the Crime Control Act of 1990, the Sentencing Commission was directed to:

> [P]rovide that a defendant convicted of violating, or conspiring to violate, section 215, 656, 657, 1005, 1006, 1007, 1014, 1032, or 1344 of title 18, United States Code, or section 1341 or 1343 affecting a financial institution (**as defined in section 20 of title 18, United States Code**), shall be assigned not less than offense level 24 under chapter 2 of the sentencing guidelines if the defendant derives more than $1,000,000 in gross receipts from the offense.

*Id.* (emphasis added).

In response to § 2507, the Commission promulgated what was U.S.S.G. § 2F1.1(b)(8)(B) at the time Soileau was sentenced.  In subsection (b)(8)(B) the Commission did not, however, adopt the definition of "financial institution" in 18 U.S.C. § 20, as directed by Congress, but rather retained the same definition of "financial institution" it had adopted the previous year when carrying out the FIRREA directive.  *See* U.S.S.G. § 2F1.1, comment. (n.19) (2000).  The definition in application note 19 is much broader than the definition in 18 U.S.C. § 20.[2]  The background

---

[2]     Section 20 states, "the term 'financial institution' means--

   (1) an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act);

6

note states, "Subsection (b)(8)(B) implements the instruction to the Commission in section 2507 of Public Law 101-647." U.S.S.G. § 2F.1.1, comment. (backg'd.) (2000). In this background note, the words ***"in a broader form"*** are noticeably missing. *See* U.S.S.G. § 2F.1.1, comment. (backg'd.) (2000).

The Sentencing Commission has been delegated legislative discretion in formulating guidelines. ***United States v. LaBonte***, 520 U.S. 751, 757 (1997); ***Mistretta v. United States***, 488 U.S. 361, 377 (1989); *see also* 28 U.S.C. § 994(a) (delegating duties to the Sentencing Commission). Furthermore, a guideline's commentary "is authoritative unless it violates the Constitution or a federal

---

(2) a credit union with accounts insured by the National Credit Union Share Insurance Fund;

(3) a Federal home loan bank or a member, as defined in section 2 of the Federal Home Loan Bank Act (12 U.S.C. 1422), of the Federal home loan bank system;

(4) a System institution of the Farm Credit System, as defined in section 5.35(3) of the Farm Credit Act of 1971;

(5) a small business investment company, as defined in section 103 of the Small Business Investment Act of 1958 (15 U.S.C. 662);

(6) a depository institution holding company (as defined in section 3(w)(1) of the Federal Deposit Insurance Act;

(7) a Federal Reserve bank or a member bank of the Federal Reserve System;

(8) an organization operating under section 25 or section 25(a) of the Federal Reserve Act; or

(9) a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978).

statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." ***Stinson v. United States***, 508 U.S. 36, 38 (1993). In this case, however, it appears the Sentencing Commission was never directed to included Medicare as a "financial institution" to which § 2F1.1(b)(8)(B) applies and has not exercised its discretion to do so.

When presented with an issue similar to the one in this case, the Seventh Circuit held that when the Sentencing Commission defined "financial institution" in U.S.S.G. § 2F1.1(b)(8)(B) by adopting the same broad definition used for subsection (b)(8)(A), but only referencing the specific congressional directive defining "financial institution" more narrowly, the Commission was not exercising "independent legislative judgment" but rather "merely misreading" a congressional directive.[3] ***United States v. Tomasino***, 206 F.3d 739, 741 (7th Cir. 2000). In ***Tomasino***, the Seventh Circuit upheld a district court's refusal to enhance a mail fraud sentence under U.S.S.G. § 2F1.1(b)(8)(B) by concluding that "pension funds," although specifically listed in the definition of "financial institution" by the Commission in the application note, were not included in the definition of institutions for which Congress directed the Commission to increase penalties for when affected by crimes. ***Id***. at 741-42. Furthermore, the court noted

---

[3] The Seventh Circuit decision addresses § 2F1.1(b)(7)(B) because § 2F1.1(b)(8)(B) was actually § 2F1.1(b)(7)(B) for the sentence at issue in that case. *See* U.S.S.G. § 2F1.1(b)(7) (1998).

8

there is nothing to indicate the Commission was exercising its discretion to include pension funds in the list of "financial institutions" to which § 2F1.1(b)(8)(B) should apply.  *Id*. at 742.

Similarly, in the present case the list of "financial institutions" Congress directed, by referencing section 20 of title 18, to be encompassed by the guideline is not as broad as the Sentencing Commission's definition in application note 19 and does not include, either explicitly or implicitly, the Medicare Program. *See* 18 U.S.C. § 20.  Nor is Medicare listed anywhere in the sections cross referenced in the congressional directive.[4]  *See* Pub. L. 101-647 § 2507(a), 104 Stat. 4862.  Likewise, nowhere in the entire United States Code is there a definition of "financial institution" that includes the Medicare program.  In this case, however, unlike **Tomasino**, even the definition in application note 19 to the guideline, though extremely broad, does not include the Medicare program in the list of "financial institutions" covered under U.S.S.G. § 2F1.1(b)(8)(B)(2000) nor do any of the sections of the United States Code cross referenced in application note 19 mention Medicare.[5]  *See* U.S.S.G. § 2F1.1, comment. (n.19) (2000).

Although the government has argued that application note 19 includes entities similar to Medicare, such as private insurance

---

[4] *See* 18 U.S.C. §§ 215, 656, 657, 1005, 1006, 1007, 1014, 1032, 1341, 1343 and 1344.

[5] *See* 18 U.S.C. §§ 215, 656, 657, 1005, 1006, 1007, 1014, 1032, 1341, 1343 and 1344.

9

associations, this argument, even if logical, is useless because 18 U.S.C. § 20 includes nothing remotely similar to Medicare and Medicare cannot be considered a bank as referenced in the Crime Control Act of 1990. *See* 18 U.S.C. § 20 and Pub. L. 101-647 § 2507(a), 104 Stat. 4862. Furthermore, application note 19 does not include anything similar to Medicare in that no other government entitlement programs such as Medicare are included in the definition of "financial institution." *See* U.S.S.G. § 2F1.1, comment. (n.19) (2000). The fact that Soileau pled guilty to one count under 18 U.S.C. § 1343 is not determinative because his offense did not "affect[] a financial institution (as defined in section 20 of title 18, United States Code)." Pub. L. 101-647 § 2507(a), 104 Stat. 4862.

In summary, Congress has never defined the term "financial institution" to include the Medicare Program nor directed the Sentencing Commission to do so and it appears the Commission has never exercised its authority in order to include Medicare in the definition of "financial institution." Therefore, in the present case Soileau's sentence cannot be enhanced on the basis of § 2F1.1(b)(8)(B)(2000) because Medicare is not a "financial institution" as defined in U.S.S.G. § 2F1.1, comment. (n.19) (2000).

Because we have determined that Medicare is not a "financial institution," and, therefore, U.S.S.G. § 2F1.1(b)(8)(B) (2000)

10

cannot be used to enhance Soileau's sentence, it is unnecessary to make a determination on the second issue of whether Soileau personally derived more than $1,000,000 in gross receipts from the offense.

## CONCLUSION

Having carefully reviewed the record of this case, the parties' respective briefing and arguments, and for the reasons set forth above we conclude that the district court did err in finding that Medicare is a "financial institution" and enhancing Soileau's sentence pursuant to U.S.S.G. § 2F1.1(b)(8)(B). Accordingly, we VACATE Soileau's sentence and REMAND for resentencing consistent with this opinion.

**VACATED** AND **REMANDED.**