In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1535

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

v.

CARMEN HERNANDEZ,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 212—**John W. Darrah**, *Judge.*

ARGUED SEPTEMBER 12, 2002—DECIDED MARCH 28, 2003

Before RIPPLE, ROVNER and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Carmen Hernandez was indicted for her part in a conspiracy to import, possess, and pass counterfeit United States currency. Ms. Hernandez and her accomplice, Myrian Zambrano, obtained counterfeit bills from a source in Peru and then smuggled them into the United States. They intended to pass the bills at stores and to send the change back to their source in Peru. On March 10, 2002, Ms. Hernandez was arrested for attempting to pass a counterfeit $100 bill at a Menards home improvement store in Lombard, Illinois. She was indicted and convicted for conspiracy, *see* 18 U.S.C. § 371, and for

possessing and concealing counterfeit obligations of the United States, *see* 18 U.S.C. § 472. The district court sentenced Ms. Hernandez to eleven months' confinement and three years of supervised release.[1] The Government now appeals the sentence. For the reasons set forth in the following opinion, we must vacate the sentence imposed by the district court and remand the case for further proceedings.

## I

Ms. Hernandez was convicted of possessing counterfeit currency in violation of 18 U.S.C. § 472.[2] Section 2B5.1 is the Sentencing Guideline section that applies to violations of § 472, *see* U.S.S.G. App. A (2001); it also applies to violations of other sections, including 18 U.S.C. § 470, which punishes counterfeit acts committed outside of the United States. Although the base offense level under § 2B5.1 is 9, § 2B5.1 includes enhancements for certain specific offense characteristics, including a two-level en-

---

[1] We note what appears to be a scrivener's error in the judgment entered by the district court. It recites that the defendant pleaded guilty. The record reveals that the defendant was found guilty after a trial by jury.

[2] Section 472 provides:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than fifteen years, or both.

18 U.S.C. § 472.

hancement "[i]f any part of the offense was committed outside the United States . . . ." U.S.S.G. § 2B5.1(b)(5).

The district court noted that part of Ms. Hernandez's offense was committed outside the United States, but it concluded nevertheless that the enhancement provided for in subsection (b)(5) did not apply to Ms. Hernandez's conviction for violating 18 U.S.C. § 472 because the Sentencing Commission adopted that enhancement in response to a Congressional directive that concerned only 18 U.S.C. § 470.[3] We review the district court's interpretation of the Sentencing Guidelines de novo. *See United States v. Mojica*, 185 F.3d 780, 791 (7th Cir. 1999).

In the Antiterrorism and Effective Death Penalty Act, Congress set forth its findings that United States currency was being counterfeited outside the United States and that the Sentencing Commission had "failed to provide, in its sentencing guidelines, for an appropriate enhancement of punishment for defendants convicted of counterfeiting United States currency outside the United

---

[3]   Section 470 provides:

> A person who, outside the United States, engages in the act of—
>
> > (1) making, dealing, or possessing any counterfeit obligation or other security of the United States; or
> >
> > (2) making, dealing, or possessing any plate, stone, or other thing, or any part thereof, used to counterfeit such obligation or security,
>
> if such act would constitute a violation of section 471, 473, or 474 if committed within the United States, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 470.

States." Pub. L. No. 104-132, tit. VIII, § 807(f)(4), 110 Stat. 1308 (1996), *reprinted in* 18 U.S.C. § 470 notes. Congress therefore directed the Sentencing Commission: "[T]he Commission shall amend the sentencing guidelines pre-scribed by the Commission to provide an appropriate enhancement of the punishment for a defendant con-victed under section 470 of title 18 of [the United States Code]." *Id.* § 807(h). In response, the Commission amended U.S.S.G. § 2B5.1 to require that an enhancement apply "[i]f any part of the offense was committed outside the United States. . . ." U.S.S.G. § 2B5.1(b)(5); *see* U.S.S.G. Manual, App. C, Amendment 554.[4] The Commission sim-ply added the specific offense characteristic to § 2B5.1, and that enhancement now on its face applies to all United States Code sections within the ambit of U.S.S.G. § 2B5.1, not just 18 U.S.C. § 470.[5]

Ms. Hernandez argues that Congress only directed the Sentencing Commission to increase the sentence of defen-dants convicted under 18 U.S.C. § 470. She points us to *United States v. Tomasino*, 206 F.3d 739 (7th Cir. 2000), *amended by* 230 F.3d 1034 (7th Cir. 2000). In *Tomasino*, this court concluded that, because we did not have "at least minimal confidence . . . that the Commission was not sim-ply misinterpreting a statute," the court could not know whether the Commission was exercising its legislative judgment and therefore could not know whether the defendant lawfully was sentenced. *Id.* at 742. However,

---

[4] At the time of the amendment, the enhancement at issue here was designated as subsection (b)(4). It was later redes-ignated as subsection (b)(5), effective November 1, 2001. *See* U.S.S.G. Manual, App. C Supp., Amendment 618.

[5] Guideline § 2B5.1 applies to 18 U.S.C. §§ 470-74A, 476, 477, 500, 501 and 1003. *See* U.S.S.G. § 2B5.1, Statutory Provisions.

*Tomasino* is not controlling in the situation before us. Unlike *Tomasino*, the circumstances here permit us to have "at least minimal confidence" that the Commission was exercising its legislative judgment in applying the enhancement to convictions under statutes other than 18 U.S.C. § 470. In *Tomasino*, the court concluded that, although the Commission knew that its definition of "financial institution" included a pension fund, it was possible that it had overlooked the statutory definition that was cross-referenced by the provision that it sought to implement and that did not include pension funds. The discrepancy between the ambit of the guideline and the directive of Congress was clear only by looking to the cross-referenced statute, and there was no indication that the Commission had taken into account the cross-reference. By contrast, in the situation before us, the discrepancy between the guideline's ambit and the Congressional directive is clear on the face of both provisions. The Congressional directive referred only to § 470, but the Commission knew that its guideline applied to sections other than § 470 because it listed the sections in the guideline. *See* U.S.S.G. § 2B5.1, Statutory Provisions. We therefore have the necessary assurance that the Commission considered whether to make the guideline applicable to all sections or just to § 470 and that it decided to apply the enhancement to all sections.

Ms. Hernandez invites the court to consider the Commission's statement, "This amendment addresses section 807(h) of the Antiterrorism and Effective Death Penalty Act of 1996." U.S.S.G. Manual, App. C, Amendment 554. She contends that this directive requires only an enhancement for individuals convicted under 18 U.S.C. § 470. In Ms. Hernandez's view, this directive indicates that the Commission was merely exercising its interpretive role and implementing Congress' will. In *Tomasino*,

the Commission described its action as "implementing" a Congressional requirement; but, in this case, the Commission described the amendment as "addressing" Congress' directive. This diction suggests an exercise of discretion absent from use of the word "implements." "Address" is defined as follows: "To direct the efforts or turn the attention of onself." Webster's Third New International Dictionary 24 (1981). In amending U.S.S.G. § 2B5.1, the Commission turned its attention to the problem of counterfeiting accomplished abroad, and created language that plainly addresses all counterfeiting offenses to which the guideline applies.

Ms. Hernandez points out that, in explaining the amendment to § 2B5.1, the Commission said only that the amendment addresses the Congressional directive to provide for an appropriate enhancement for international offenses violating 18 U.S.C. § 470. The Commission did not say that it was implementing the Congressional directive "in broader form." The Commission has used such language in explaining amendments to the Guidelines that respond to, and go beyond, Congressional mandates. *See, e.g.,* U.S.S.G. § 2B5.1, Background (reciting that subsection (b)(4) "implements, in a broader form, the instruction to the Commission in section 110512 of Public Law 103-322"). Indeed, in *Tomasino,* this court noted that the absence of such language in the notes indicated that the Commission may not have meant to adopt a broader enhancement than the one called for by Congress. Notably, however, the court did not suggest that such language absolutely must accompany an enhancement that responds to, but is broader than, one called for by Congress. The circumstances here suggest that the Commission knew that its enhancement applied to more sections of the United States Code than the section specifically noted by Congress. Consequently, the district court erroneously interpreted the Guidelines;

it should have applied a two-level enhancement to Ms. Hernandez's sentence pursuant to U.S.S.G. § 2B5.1(b)(5).

## II

Sentencing Guideline § 5K2.0 allows departures from the range established by the Guidelines "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). The district court granted a downward departure of two levels because, without the departure, the Guidelines would have required a sentence of more than one year, which would have required Ms. Hernandez's deportation under INS regulations. Consequently, Ms. Hernandez's two children, ages five and six and American citizens, would have to live with their father in the United States or with their mother in the country to which she is deported. Such a result, the district court concluded, could not have been contemplated by the Guidelines. *See* R.72-1 at 15.

This court explained in *United States v. Guzman*, 236 F.3d 830 (7th Cir. 2001), that "the defendant's status as a deportable alien is relevant only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense." *Id.* at 834. The Government submits that the district court did not explain how Ms. Hernandez's alien status would make the conditions of her confinement more onerous than anticipated by the Sentencing Commission. The court did explain, howev-

er, how another "incident of punishment" would be more onerous than the Commission anticipated: without the departure, the sentence would result not only in Ms. Hernandez's deportation, but in her separation from her husband and possibly her children and in the imposition of a decision on the children to live in the United States with their father or abroad with their mother.

In evaluating this issue, we begin by noting that the Sentencing Guidelines also provide that "[f]amily ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. As such a "discouraged factor," a district court "should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 96 (1996). We cannot say that the situation here is so different from other cases that the Commission could not have anticipated that incarcerating a parent would have a disruptive impact on the family. Although it is a sad fact that families are often separated by deportation, the situation in which one parent may remain in the country legally with children who are natural born American citizens, while the other parent is ordered deported, is by no means unique.[6] The drafters of the Guidelines clearly knew that such cases arise with some frequency; therefore, this case is neither extraordinary, nor is the result substantially more onerous than

---

[6] We note that there is no contention here that the age or medical condition of the children would require, as a practical matter, that they accompany their mother. Nor is there any indication that they would be exposed to extraordinary danger if they were to accompany their mother.

the Commission calculated in drafting the Guidelines. Therefore, we must conclude that the district court abused its discretion in granting a two-level downward departure in Ms. Hernandez's sentence. *See United States v. Maung*, No. 02-12945, 2003 WL 262476, at *3 (11th Cir. Feb. 10, 2003).

## III

The parties agree that the 2000 version of the Sentencing Guidelines applies to this question. Under that version of § 2B5.1, for offenses involving more than $2,000 worth of counterfeit currency, the offense level is increased according to a table set out in § 2F1.1. *See* U.S.S.G. § 2B5.1(b)(1) (2000).[7] That table requires the offense level to be increased by 3 if the amount of currency was between $10,000 and $20,000, and by 4 if the amount was between $20,000 and $40,000. *See* U.S.S.G. § 2F1.1(b)(1) (2000).

If the $4,300 worth of counterfeit currency found at Ms. Zambrano's house can be attributed to Ms. Hernandez, then

---

[7] The 2001 version of the Guidelines, in effect at the time of sentencing, refers to a different section, § 2B1.1, for the determination of the appropriate level. *See* U.S.S.G. § 2B5.1(b)(1) (2001). Under § 2B1.1(b)(1)(C), however, Ms. Hernandez's offense level would be increased by 4 whether or not the amount of currency found in Ms. Zambrano's house was considered. Under the older version, using § 2F1.1, the offense level would be increased by only 3 if the currency found in Ms. Zambrano's house was excluded. Because the previous version of the Guidelines was the version in effect at the time of Ms. Hernandez's offense, and because its application could result in a lower offense level, the court properly relied on the older version rather than the version in effect at the time of sentencing. *See United States v. Kosmel*, 272 F.3d 501, 507 (7th Cir. 2002).

the total currency involved in Ms. Hernandez's offense would be $22,400. Without the inclusion of those funds, Ms. Hernandez's offense would involve less than $20,000. In calculating the amount of contraband attributable to a defendant, the Guidelines provide that "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. 1B1.3, Application Note 2; *see id.* 1B1.3(a)(1)(B). The district court recognized that the $4,300 of counterfeit currency discovered in Ms. Zambrano's house can be attributed to Ms. Hernandez only if Ms. Zambrano's possession of that currency was in furtherance of a criminal activity jointly undertaken by Ms. Hernandez and Ms. Zambrano. Moreover, it also must have been reasonably foreseeable to Ms. Hernandez that her confederate would have those funds.

The district court determined that Ms. Zambrano's possession of $4,300 was not foreseeable to Ms. Hernandez and therefore excluded it from the amount attributable to her.[8] This court reviews a district court's findings with respect to the amount of counterfeit currency attributable to a defendant under U.S.S.G. §§ 1B1.3 and 2F1.1 for clear error, *see United States v. Bolin*, 35 F.3d 306, 309 (7th Cir. 1994), and we review legal interpretations of the Guidelines de novo, *see United States v. Mojica*, 185 F.3d 780, 791 (7th Cir. 1999).

---

[8] The court based its determination on the foreseeability question, and Ms. Hernandez does not claim that the $4,300 in currency was not part of a "jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

We must conclude that the district court erred in its foreseeability determination because it equated foreseeability with knowledge. A defendant need not know of a co-conspirator's actions for those actions reasonably to be foreseeable to the defendant. *See United States v. Akindele*, 84 F.3d 948, 959 (7th Cir. 1996) (discussing foreseeability under U.S.S.G. § 1B1.3). The district court stated: "So the issue therefore is the issue of foreseeability, . . . and that is, did Carmen Hernandez reasonably know that the conduct of the other conspirator, in this case Myrian Zambrano, included bringing in $12,500 in March of 2001?" R.72-1 at 11. The district court concluded: "There's nothing that would fairly support an inference that Miss Hernandez was knowledgeable about that amount [the $4,300 found at Ms. Zambrano's house]." *Id.* at 13. Such a requirement that Ms. Hernandez have had "knowledge" of the amount of counterfeit currency is an error of law. On remand, therefore, the district court must redetermine this issue under the correct legal standard.

### Conclusion

For the reasons set forth in this opinion, the sentence imposed by the district court is vacated, and the case is remanded for the imposition of a sentence in conformity with this opinion.

VACATED and REMANDED

A true Copy:

      Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*