**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 10, 2010
Decided December 22, 2010

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 10-1871

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 09-CR-461 |
| ELIZABETH CULBERTSON, | |
| *Defendant-Appellant.* | Virginia M. Kendall, |
| | *Judge.* |

**O R D E R**

Elizabeth Culbertson pleaded guilty to one count of bank fraud. *See* 18 U.S.C. § 1344. She was sentenced to a total of 12 months' and a day imprisonment, roughly three months below the guidelines range. Culbertson argues on appeal that the district court did not adequately consider her family circumstances, while using her religious background as an aggravating factor during sentencing. The district court explicitly considered the effect of Culbertson's incarceration on her youngest son, which was the focus of her argument at sentencing. And rather than using Culbertson's religious background as a basis for sentencing, the district court made two isolated references that highlighted Culbertson's advantaged background and her selfish motivation for the crime. Because the district court

adequately considered Culbertson's family circumstances and did not rely on her religious background in sentencing, we affirm.

Culbertson pleaded guilty to stealing $141,665 from her employer, South Division Credit Union in violation of 18 U.S.C. § 1344. The government, Culbertson, the probation department, and the district judge all agreed that the properly calculated guidelines sentencing range is 15 to 21 months. Culbertson, however, asked the court to impose home confinement, arguing that incarceration would be too harsh given the detrimental effect on her children, ages nineteen, ten, nine, and two. Although she noted that her two middle children had a typical dependence on Culbertson, she argued that her role as the primary caregiver to the three minor children, particularly a young son with a congenital heart condition, warranted a sentence significantly below the guidelines range. Culbertson also contended that incarceration is inappropriate because it would not account for potential collateral consequences, such as the loss of custody of her children and the collapse of her marriage. (She and her husband had already separated.)

At sentencing, the judge balanced Culbertson's family circumstances against the gravity of her crime. The judge discussed the positive family environment in which she was raised by noting that in contrast to the bulk of the people sentenced by the court, Culbertson did not come from abject poverty, a broken family, or an environment filled with violence. The judge pointed out that Culbertson grew up in a family setting imbued with loyalty, hard work, and integrity, that her close family sent her to Catholic grade school, and that this background taught Culbertson about "right and wrong and family and community."

The judge then discussed the aggravating factors, noting that the fraud involved close to 20 separate transactions and a sizable amount of money, and that Culbertson still blamed her supervisor and husband for her criminal behavior. The judge also mentioned the need for general deterrence in the current economic downturn. She then turned to the mitigating circumstances, recognizing Culbertson's spotless criminal history, her willingness to plead immediately, and the health and well-being of her youngest son. Finally, recalling that Culbertson's father had worked two jobs to send Culbertson to Catholic school, the judge was troubled that Culbertson spent the fruits of her fraudulent behavior on luxuries for her husband rather than on her children's education, a mortgage, or medical care.

The court settled on a below-range sentence of 12 months and a day. The court expressed concern that the youngest child might need surgery and explained that Culbertson's term of incarceration could be scheduled to allow her to be with him during that time. Additionally, the court agreed to allow Culbertson to begin her term of

incarceration after the completion of the school year, presumably for the benefit of her middle two children since her youngest son was not yet enrolled in school.

On appeal, Culbertson first argues that the district court erred by considering the effects of her incarceration only on her youngest son and not on her two middle children. The regime created by *Rita v. United States*, 551 U.S. 338 (2007), imposes a procedural requirement that the district court adequately explain a sentence in light of the factors set forth in 18 U.S.C § 3553(a). *United States v. Miranda*, 505 F.3d 785, 791 (7th Cir. 2007); *United States v. Wallace,* 458 F.3d 606, 609 (7th Cir. 2006). It is not, however, obligated to comment on every argument a defendant raises, particularly an argument that lacks any conceivable merit. *Miranda*, 505 at 792; *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010).

The guidelines instruct that "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. Thus mitigation arguments relying on the effects of incarceration on children must identify effects that go beyond those that any child "must suffer when a parent is imprisoned." *Gary*, 613 F.3d at 710; *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). Arguments relying on the general hardships that most families suffer when a parent is imprisoned do not require discussion at all. *Gary*, 613 F.3d at 710.

Neither Culbertson's sentencing memorandum nor her counsel argued that her incarceration would cause her middle two sons unusual disruption. Rather, while noting that their relationship with their father was not strong, Culbertson described their attachment to their mother as "typical." Given Culbertson's failure to identify any extraordinary effects on her middle two sons, the district court was not obligated to explain its reason for not treating these effects as mitigating. *Gary*, 613 F.3d at 710.

Culbertson characterizes as extraordinary the possibility that her estranged husband will obtain custody of their children, separating them from their grandfather and stepbrother. But this court treats the ability of a competent parent who is not incarcerated to take care of the children as a factor diminishing the harshness of incarceration. *United States v. Jaderany*, 221 F.3d 989, 996 (7th Cir. 2000) (recognizing that "a defendant's ability to rely on a supportive spouse or other relatives to look after his children makes his case for a downward departure less compelling"). Moreover this court has held that no extraordinary family circumstance arises even if a sentence results in a defendant's deportation, if the defendant's children remain under another parent's care in the United States. *United States v. Hernandez,* 325 F.3d 811, 816 (7th Cir. 2003). If separation-plus-lost-custody caused by deportation is insufficiently extraordinary, the possibility that Culbertson would lose custody of her children cannot be characterized as extraordinary. Finally, given that this court does not recognize the anxiety caused by separation from a parent to be extraordinary,

it is difficult to characterize separation from a grandparent as extraordinary. *See United States v. Wright*, 218 F.3d 812, 815 (7th Cir. 2000).

Culbertson's second argument on appeal is that the district court erred by considering her Catholic upbringing to determine her sentence. Culbertson relies on U.S.S.G. § 5H1.10, which prohibits the consideration of religion for sentencing. *See United States v. Anderson*, 583 F.3d 504, 510 (7th Cir. 2009). Culbertson points to two comments made by the district court during the sentencing hearing to show that her Catholic upbringing was used as an aggravating factor: (1) "You come from a Catholic family and went through Catholic grade school, as I did. So I know that you've been instructed, as I was, as we grow about right and wrong and family and community," and (2) "And it is also troubling that the money from the crime wasn't to send them off to, say, the Catholic education that your father worked two jobs to send you to."

It is ill-advised for district courts to refer to a defendant's religious background since such comments are easy to mischaracterize. Nonetheless, the district court here did not rely on Culbertson's Catholicism to determine her sentence. When the district court commented that Culbertson knew "about right and wrong and family and community," it was contrasting Culbertson's negative life choices and her positive background, which included having role models who demonstrated loyalty, integrity, and commitment to family and community and attending a school that taught values of right and wrong. The court described the contrast as "troubling" but did not state or imply that Culbertson's religion itself was a sentencing factor. [1]

The court's reference to Culbertson's decision not to use the money to pay for her children to attend Catholic school reflects the district court's frustration with the selfish motivation for Culbertson's crime, not a disagreement with her spiritual direction. The court believed Culbertson's conduct was especially shameful because the stolen money was used for "a Harley Davidson motorcycle or a cool car" rather than for medical care, a mortgage, or "the Catholic education that [Culbertson's] father worked two jobs" to provide.

The district court gave adequate consideration to Culbertson's family circumstances and did not rely on her religious background in sentencing. Accordingly, the judgment of

---

[1] While the court's reference to Culbertson's Catholic education is acceptable in the context of its discussion of Culbertson's negative life choices, we caution the court not to personalize the experience with the phrases "as I did" and "as I was."

the district court is AFFIRMED.