United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 16, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 02-20174
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOYCE LEE HICKMAN, also known as Joyce Saunders

Defendant - Appellant,

_____

Case No. 02-20196

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOYCE LEE HICKMAN,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Joyce Lee Hickman, also known as Joyce Saunders, was indicted for thirty-two counts of health care fraud, in violation of 18 U.S.C. § 1347, by two separate grand juries. The two cases were consolidated for trial and a jury convicted Hickman on all counts. Her convictions were based on a series of fraudulent transactions billed from 1995 to 2001, by her umbrella company, Total Medical Management, to Medicare, Medicaid, and private insurance companies. During this period, Hickman fraudulently billed over $29 million, and received over $9 million, for durable medical equipment ("DME") that was never ordered and inpatient doctor visits and health care services that never occurred. Hickman was sentenced to two concurrent 120-month terms of imprisonment (on counts one to seventeen of the first indictment and one to fourteen of the second indictment, respectively) and one consecutive 90-month term for count 15 of the second indictment. The court also imposed three years of supervised release, to run concurrently on all counts. Finally, the district court ordered Hickman to pay restitution in the amount of $9,348,654.49 for each case, to run concurrently.

Hickman timely appeals, challenging her sentences on five separate grounds. Specifically, she argues that: (1) the district court's instructions to the jury omitted two elements of the offense and failed to properly charge a third element, and these errors constitute plain error; (2) the district court's removal of one prospective juror for cause constitutes reversible error; (3) her convictions under the first three counts of the first indictment violate the Ex Post Facto Clause; (4) the district court's written and oral sentences were inconsistent and thus the written judgments must be amended; and (5) the district court committed plain error by enhancing her offense level under U.S.S.G. § 2F1.1(b)(8)(B) in light of *United States v. Soileau*, 309 F.3d 877 (5th Cir. 2002). Because we find

that Hickman's convictions on three counts violate the Ex Post Facto Clause and remand for resentencing, we do not reach the fourth and fifth issues.[1]

The charges arose out of a series of transactions involving Total Medical Management ("TMM"), a company owned by Hickman.[2] TMM included a billing service for physicians, a DME company, and a medical and dental clinic. Hickman ran virtually every aspect of TMM: among other things, she made every business decision, signed the checks and authorized payments, had reimbursement payments sent directly to her, opened all business mail, and exclusively handled the DME billing.

The first three counts of the first indictment involved electronic claims that were submitted by TMM to Palmetto Government Benefit Administrators ("Palmetto GBA"), the entity that processed Medicare DME claims from various states including Texas. In the fall of 1995, TMM submitted a claim for beneficiary Lee Perkins for a lymphedema pump that was never prescribed or authorized by the treating physician. In fact, the designated physician testified that his signature had been forged and the diagnosis was false. In the spring of 1996, TMM submitted a claim for beneficiary Joyce Richardson for various DME that had never been prescribed. Again the physician listed on the claim testified that her name was listed incorrectly, that she had not authorized the claim, and that she had not treated Joyce Richardson. Around the same time, TMM submitted a similarly fraudulent claim for beneficiary Agatha Moore. Palmetto GBA paid TMM $3,820.54 in Medicare

---

[1]We do, however, note that the fifth issue presented by Hickman is novel and the district court should consider the impact of *Soileau* upon remand. We take no position on the merits of this issue.

[2]Ms. Hickman created and operated a number of companies. She applied for a Medicare provider number in March 1995 under the name Total Medical Management. She later created (and may have incorporated) various other companies, including T.M.M. Medical Group; Total Medical Management, Inc.; Classic Medical and Dental Clinic Downtown, Inc.; and V.I.P. Medical Clinic, Inc.

funds for the Lee Perkins claim and $2,579.60 in Medicare funds for the Joyce Richardson and Agatha Moore claims. Hickman endorsed both checks and deposited them in TMM's bank account.

Counts four to seventeen of the first indictment involved claims for fictitious inpatient doctor visits. Hickman's TMM Medical Group submitted the claims on behalf of doctors LaVerne Natalie Carroll and Warren Dailey. These claims involved Medicare, Medicaid, and crossover claims (submitted to both Medicare and Medicaid) processed by Trailblazers Health Enterprise, L.L.C., the Medicare carrier for Texas, and National Heritage Insurance Company, the Medicaid contractor for Texas. The Government presented evidence that Hickman submitted fraudulent claims for at least fourteen different patients, for a total of at least 731 fictitious visits and more than $109,000 in billed charges. Virtually all of this money was deposited in TMM's account, over which Hickman had exclusive access. Hickman's estranged husband testified that they regularly used this account to pay their personal expenses.

The remaining fifteen counts, charged in the second indictment, involved various bogus claims. Dr. Nwannem Obi-Okoye worked as an independent contractor for Hickman at the VIP Medical Clinic. Obi-Okoye testified that Hickman had obtained a second Medicare provider number in Obi-Okoye's name without her permission. Under this second provider number, Hickman fraudulently billed over $74,000 worth of inpatient hospital visits for six different patients to Medicare.

Hickman also submitted over $27,000 worth of chemotherapy claims to Guardian Insurance Company of America for beneficiary Jenazare Placek. Jenazare Placek testified that she had visited

Hickman's clinic once, but that she had never received chemotherapy at the clinic.[3] Likewise, VIP Medical Clinic submitted at least three false claims for beneficiary Bridgett Roberson to CNA, Roberson's insurance provider, for over $19,000 worth of physical therapy that never occurred. Finally, Hickman billed over $68,000 in claims to UTMB Health Care Systems and NYLCare, the insurance providers for Texas state employees, on behalf of beneficiary Dena Lee for chemotherapy services that never happened.

We now consider each of Hickman's claims of trial error. Hickman first argues that the district court's instructions to the jury were erroneous for several reasons. Hickman concedes, however, that because she failed to object below, the appropriate standard of review is plain error. *United States v. Daniels*, 281 F.3d 168, 183 (5th Cir. 2002). Error is plain only when it is clear or obvious and it affects the defendant's substantial rights. *United States v. Cotton*, 535 U.S. 625, 631 (2002). A defendant's substantial rights are only affected if the error "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). If these conditions are met, then we will only reverse the error if it seriously affects the "fairness, integrity, or public reputation of judicial proceedings." *Cotton*, 535 U.S. at 631-32 (citation omitted).

Hickman points out that the district court did not charge two elements of the offense in the instructions, and failed to properly charge a third element. First, Hickman was charged with violating

---

[3]In fact, Placek testified that she has never had cancer. Not surprisingly, several of the beneficiaries listed on Hickman's fraudulent claims were nowhere near a hospital during the time frames covered by the claims. One, Elvatous Peters, was incarcerated during the months Hickman listed him as an inpatient at St. Joseph's Hospital. Hickman was also willing to use family in her schemes. Dena Lee, Hickman's niece, was completely unaware that Hickman had billed her visits to the clinic as chemotherapy services.

18 U.S.C. § 1347, which makes it a crime to defraud a "health care benefit program."[4] The jury was not instructed, however, that a "health care benefit program" is defined as "any public or private plan or contract, *affecting commerce*, under which any medical benefit, item, or service is provided to any individual . . . ." 18 U.S.C. § 24(b) (emphasis added). Hickman contends that the district court's failure to charge the jury on the "affecting commerce" requirement is reversible error, because this requirement constitutes a jurisdictional element, and thus an essential element of the offense. *See United States v. Pierson*, 139 F.3d 501, 503 (5th Cir. 1998) (indicating that the words "affecting commerce" create a jurisdictional element).

Hickman is correct that a defendant is entitled to have all the essential elements of a charged offense submitted to a jury and proven beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 510 (1995). Likewise, Hickman is probably correct that the jurisdictional element of § 1347 is an essential element of that offense. *See, e.g.*, *United States v. Westbrook*, 119 F.3d 1176, 1191 (5th Cir. 1997) (stating that the "government must provide proof of some effect on interstate commerce" to show that the defendants' actions violated a statute that has an "affecting commerce"-like requirement); *United States v. Parker*, 104 F.3d 72, 73 (5th Cir. 1997) (en banc) (implying that the "affecting commerce" requirement of the Hobbs Act, 18 U.S.C. § 1951, is an essential element

---

[4]In pertinent part, 18 U.S.C. § 1347 reads as follows:
> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice–
>> (1) to defraud any health care benefit program; or
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned . . . .

of the crime). We need not affirmatively decide this issue though, because, regardless, Hickman has not shown plain error.

The jury found Hickman guilty of defrauding Medicare and Medicaid on multiple occasions, as well as large private insurance companies. Hickman does not argue that Medicare and Medicaid are not "health care benefit programs" with the meaning of § 24(b). And it cannot seriously be contended that these institutions and their functions do not affect commerce. Hickman argues only that the word "commerce" was never used at trial. Even if we assume, *arguendo*, that this error was plain and affected Hickman's substantial rights, the final prong of the plain error standard is not satisfied. The evidence clearly shows that the district court's failure to invoke this word in the jury instructions did not affect the fairness or integrity of judicial proceedings. *See Johnson v. United States*, 520 U.S. 461, 469-70 (1997) (holding that, even though the materiality element of the offense at issue was not submitted to the jury, the evidence of materiality was strong enough that the error did not seriously affect the fairness, integrity or public reputation of judicial proceedings); *United States v. Allen*, 129 F.3d 1159, 1164 (10th Cir. 1997) (reaching a similar conclusion when the defendant argued that the jury instructions did not require the jury to make the necessary finding on the interstate commerce element of the offense at issue).

Second, Hickman asserts that the district court erred when it failed to instruct the jury that § 1347 requires that the defendant's fraud be "in connection with the delivery of or payment for health care benefits, items, or services." Again, Hickman cannot demonstrate plain error. The district court did not use the exact statutory language, but it did instruct the jury that it was required to find, beyond a reasonable doubt, that the defendant's purpose was to defraud the health care benefits programs out of a "direct economic benefit like money or property" and that the defendant "used or

-7-

tried to use the plan to get paid from a health care benefits program." As a whole, these statements are more than enough to undermine Hickman's argument that the omission constitutes plain error. In addition, the Government presented evidence that Hickman fraudulently billed for DME that was never ordered and health care services that never occurred. Thus, the evidence of this element that was presented to the jury was so overwhelming that we cannot conclude that any shortcoming in the instruction created plain error. *See Johnson*, 520 U.S. at 469-70.

Third, Hickman argues that, although the district court instructed the jury that it was required to find that she acted "willfully," it did not require that this finding be "beyond a reasonable doubt." The district court first instructed the jury, in the general instructions, that the jury needed to decide "whether the government has proved beyond a reasonable doubt that the defendant committed the offense" and that the "defendant must be found to have acted knowingly and willfully." The general instructions also defined "knowingly" and "willfully." Later, in the special instructions, the court again emphasized that the jury needed to decide, beyond a reasonable doubt, that the defendant acted knowingly, but it did not specifically use the word "willfully."

Hickman contends that this "untethered" the willfulness requirement from the other elements of the offense and reduced the constitutionally-required burden of proof for this element. This argument is not persuasive. The first set of instructions defined "willfully" to mean that "an act was done with a conscious purpose to violate the law." The second, special instructions required the jury to find, beyond a reasonable doubt, that "the purpose of the defendant's plan was to defraud—trick or cheat—a health care benefits program out of . . . money or property." Thus, the special instruction

incorporated "willfully." We find no plain error on this ground.[5]

Hickman next argues that the district court's removal of a venireperson, for cause, was reversible error. Hickman objected to this removal at trial, so we would normally review the district court's decision under an abuse of discretion standard. *See United States v. Duncan*, 191 F.3d 569, 574 (5th Cir. 1999). There is no reason to engage in this analysis, however, because Hickman concedes that a defendant who appeals a district court's decision to exclude a potential juror for cause cannot obtain a reversal of his conviction unless he shows the jury actually selected was biased. *See United States v. Prati*, 861 F.2d 82, 87 (5th Cir. 1988). Hickman admits that she cannot make this showing. Accordingly, we find no reversible error with respect to this issue.

Finally, Hickman asserts that counts one through three of the first indictment allege fraudulent acts that occurred before August 21, 1996, the effective date of the health care fraud statute, 18 U.S.C. § 1347. *See* Health Insurance Portability and Accountability Act, Pub. L. No. 104-191, § 242(a)(1), 110 Stat. 1936, 2016 (1996). Accordingly, Hickman contends that these counts violate the Ex Post Facto Clause.

A law violates the Ex Post Facto Clause if it (1) punishes as a crime an act previously committed which was not a crime when done; (2) makes more burdensome the punishment for a crime after it has been committed; or (3) deprives a defendant of any defense available according to the law at the time the charged act was committed. *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). Since Hickman did not make this argument in district court, we review it only for plain error. *United States v. Todd*, 735 F.2d 146, 149 (5th Cir. 1984).

---

[5]Hickman also argues that the cumulative effect of these three errors rises to the level of automatically reversible, structural error. We find this argument to be meritless.

The heart of Hickman's argument is that the counts one, two, and three are impermissible because they are premised on fraudulent claims which were submitted to Medicare and paid before the statute was enacted—in other words, Hickman contends that all the necessary elements of the offense were complete before the critical date. The Government responds that health care fraud is a continuing offense and that Hickman's scheme to defraud Medicare with false DME claims was not complete until she submitted her last false DME claim in January 1997.

To resolve this issue, we must determine what constitutes health care fraud under § 1347. Again, § 1347 punishes one who "knowingly and willfully executes, or attempts to execute, a scheme or artifice . . . to defraud any health care benefit program . . . or . . . to obtain, by means of false or fraudulent pretenses . . . any of the money or property . . . of . . . any health care benefit program . . . ." Although there is a paucity of case law interpreting this provision, its language and structure are almost identical to the bank fraud statute, 18 U.S.C. § 1344.[6] In *United States v. Lemons*, 941 F.2d 309 (5th Cir. 1991), we interpreted § 1344 to punish "each execution of the scheme." *Id.* at 318. We contrasted this with the mail and wire fraud statutes, which punish "each act in furtherance, or execution, of the scheme." *Id.*; *see also United States v. Hord*, 6 F.3d 276, 281 (5th Cir. 1993) (affirming *Lemons*'s construction of § 1344); *United States v. Heath*, 970 F.2d 1397, 1402 (5th Cir. 1992) (same). This proposition is now well-settled law. *See, e.g.*, *United States v. De La Mata*, 266 F.3d 1275, 1287 (11th Cir. 2001) ("The unit of the offense created by § 1344 is

---

[6]The bank fraud statute reads, in pertinent part:
> Whoever knowing executes, or attempts to execute, a scheme or artifice . . . to defraud a financial institution . . . or . . . to obtain any of the moneys . . . of . . . a financial institution, by means of false or fraudulent pretenses . . . shall be fined . . . .

18 U.S.C. § 1344.

each execution or at tempted execution of the scheme to defraud, not each act in furtherance thereof."); *United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1994) (holding that the bank fraud statute punishes execution); *United States v. Molinaro*, 11 F.3d 853, 860 (9th Cir. 1993) (same). We hold, by analogy, that the health care fraud statute, § 1347, punishes executions or attempted executions of schemes to defraud, and not simply acts in furtherance of the scheme.[7]  Of course, although the crime of health care fraud is complete upon the execution of a scheme, any scheme can be executed a number of times, and each execution may be charged as a separate count. *See Lemons*, 941 F.2d at 317; *De La Mata*, 266 F.3d at 1287.

Obviously, the next question is what constitutes an "execution" of the scheme.  In *Hord*, we considered a check-kiting scheme.  We noted that the term "scheme to defraud" was not "capable of precise definition" but that each deposit of a false check constituted an execution because this was the act that put the bank at risk of loss.  6 F.3d at 281 (citation omitted); *see also De La Mata*, 266 F.3d at 1288 (holding that "each part of the scheme that creates a separate financial risk" is a separate execution).  In *De La Mata*, the Eleventh Circuit conducted an even more thorough analysis of this issue, noting that transactions that have a common purpose but involve separate and independent obligations to be truthful may also constitute separate executions.  266 F.3d at 1288 (citations omitted).  The *De La Mata* court concluded that:

> Ultimately, the decision of whether a particular transaction is an "execution" of the scheme or merely a component of the scheme will depend on several factors including the ultimate goal of the scheme, the nature of the scheme, the benefits intended, the

---

[7]At this point, we jump ahead of ourselves to note that this holding alone highlights the inconsistency in the Government's position.  If, in fact, Hickman is guilty of one large scheme to defraud Medicare through false DME claims, then each false claim would be an act in furtherance of the scheme, not an execution.  As such, these claims would not be separately chargeable offenses and should not have been listed as separate counts in the first indictment.

interdependence of the acts, and the number of parties involved.

*Id.* This test highlights the fact that the definition of an execution is inextricably intertwined with the way the fraudulent scheme is defined. To resolve the Ex Post Facto issue presented by this case, we must decide how to characterize Hickman's fraudulent scheme. With regard to this endeavor, the abovementioned *De La Mata* factors are instructive.

The nature of Hickman's scheme was to submit false claims to health insurers. The benefit was the money rendered by the insurer to TMM/Hickman after each false claim was processed, accepted, and paid. Financial gain was also the ultimate goal. In the end, Hickman defrauded several parties, but she primarily targeted Medicare and Medicaid. Although these factors are not particularly illuminating in this case, we find that the remaining factor—the interdependence of the acts—is dispositive. Hickman submitted each claim separately. Although she may have grouped them for efficiency, each claim was individually considered and approved. And, with each claim submission, Hickman owed a new, independent obligation to be truthful to the insurer. Hickman's scheme was, in essence, a check-kiting scheme in the health care industry. We see no reason to treat it differently from those in the bank fraud context. *See Hord*, 6 F.3d at 282 (explicitly accepting that each fraudulent check constitutes a separate execution in the bank fraud context).[8]

_____

[8]We reiterate that the process of defining a scheme and/or execution is a fact-intensive one. In *United States v. Farmigoni*, 934 F.2d 63 (5th Cir. 1991), we held that a loan officer's creation of a fraudulent letter of credit from his employer and subsequent involvement with the use of that letter of credit constituted two separate offenses. *Id.* at 65-66. In *United States v. Heath*, we held that a land-swapping transaction that involved two separate loans to two borrowers from the same savings and loan institution resulted in only one execution. 970 F.2d at 1402. Neither of these cases involve facts similar to the present one, and they are not inconsistent with our analysis.

The Government's argument that health care fraud is a continuing offense is correct. *See United States v. Nash*, 115 F.3d 1431, 1440-41 (9th Cir. 1994). It is also inapplicable. A *single* scheme to defraud is a continuing offense until the offender has executed it. Nothing in this opinion

As we explained above, Hickman submitted the claims that form the basis of these three counts in the fall of 1995 and the spring of 1996. The exhibits submitted by the Government indicate that Medicare issued a check for the Lee Perkins claim (count one) in October 1995, and Hickman deposited the check later that month. The evidence also indicates that Medicare paid both the Joyce Richardson and Agatha Moore claims with one check issued in July 1996, and Hickman deposited the check within two weeks. The Government does not dispute that these acts, which constituted three separate executions of Hickman's fraudulent scheme, were all committed before the health care fraud statute became effective. *See Hord*, 6 F.3d at 281-82 (holding that the deposit of fraudulently obtained funds completes the execution); *United States v. Gregg*, 179 F.3d 1312, 1315 (11th Cir. 1999) (same). Accordingly, Hickman's convictions on counts one through three of the first indictment violate the Ex Post Facto Clause.

We must now determine whether these violations are plain error. Hickman argues, without much elaboration, that an Ex Post Facto error is reversible error. To the extent she is arguing that it is error and obviously so, we agree. Unfortunately, she does not give any indication of how the error has affected her substantial rights. The extra counts do not appear to have affected the length of her sentence because the district court ordered 120-month sentences for thirty-one of the thirty-two counts, to run concurrently. Thus, vacating her convictions for three of the counts will not change the amount of time she spends in jail.

The district court, however, also ordered Hickman to pay restitution for her crimes in the amount of $9,348,654.59, pursuant to 18 U.S.C. § 3663. This amount of restitution included

---

contradicts this aspect of *Nash*. *See id.* at 1441 (holding that bank fraud is a continuing offense and then analyzing the facts to determine whether the *execution* of the scheme extended past the critical date).

-13-

$6,400.14 for counts one through three of the first indictment. In *Hughey v. United States*, 495 U.S. 411 (1990), the Supreme Court held that the Victim and Witness Protection Act of 1992, which is the statutory basi s of § 3663, authorized an award of restitution "*only* for the loss caused by the *specific* conduct that is the basis of the offense of conviction." *Id.* at 413 (emphasis added); *see also United States v. Barndt*, 913 F.2d 201, 203 (5th Cir. 1990) (remanding a case for proper calculation of restitution under *Hughey* when the district court improperly sentenced the defendant to an amount of restitution that was broader than the offense for which the defendant was convicted). If Hickman had been sentenced to this amount of restitution without being convicted of counts one through three, the resulting sentence would be illegal and thus plain error. *Compare Hughey*, 495 U.S. at 420 (stating that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order") *with United States v. Sias*, 227 F.3d 244, 246 (5th Cir. 2000) (holding that a sentence that exceeds the statutory limitations is an illegal sentence and constitutes plain error). Extending this reasoning, we hold the Ex Post Facto error affected Hickman's substantial rights because it affected the outcome of the district court proceedings. *See United States v. Quackenbush*, No. 00-4433, 2001 WL 574649, at *1-2 (4th Cir. May 29, 2001) (unpublished) (agreeing that there was plain error in part of a restitution order because some of the losses counted were not the basis of the defendant's offenses); *see also United States v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir. 1991) (holding that imposition of restitution for losses not related to the crime of conviction was plain error).

Although Hickman's actions prior to the creation of the health care fraud statute were indefensible, unconscionable, and undoubtedly criminal, we conclude that it is unfair, under *Hughey* and its progeny, to hold her accountable for restitution for Ex Post Facto convictions.

Thus, we REVERSE Hickman's convictions on counts one through three of the first indictment, but AFFIRM the remaining twenty-nine counts. Because the district court imposed the same amount of restitution, $9,348,654.49, to run concurrently in both cases and because the order for restitution is part and parcel of each overall sentence, both sentences are VACATED and the case is REMANDED for resentencing not inconsistent with this opinion. *See United States v. Hayes*, 32 F.3d 171, 173 (5th Cir. 1994).

AFFIRMED IN PART; REVERSED IN PART; VACATED; REMANDED.