# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 23, 2010

No. 09-40278

Charles R. Fulbruge III
Clerk

UNITED STATE OF AMERICA

Plaintiff-Appellee

v.

EARNEST LYNN ROSS

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:08-CR-143-1

Before GARWOOD, WIENER, and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:[*]

On November 21, 2008, a jury found defendant-appellant, Earnest Lynn Ross (Ross), guilty on two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Ross was sentenced to 120 months imprisonment on each count, to run consecutively for a total of 240 months. He appeals his conviction and his sentence, arguing that the prosecution's use of a peremptory challenge and two challenges for cause during voir dire violated his constitutional rights, that the evidence at trial

---

[*]Pursuant to 5TH CIR. R.47.5 the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

was insufficient to support the jury's verdict, that the district court made several errors at his sentencing, and that the search and seizure of his vehicle was illegal. We affirm for the reasons herein below stated.

### FACTS AND PROCEEDINGS BELOW

In June 2008, an informant named Sedric Autrey notified the police that he, Ross, Courtney Farmer (Farmer), and Devin Stephen (Stephen) were planning to stage a home invasion to rob a residence in Denton County, Texas. According to Autrey, Ross had participated in numerous home invasions over the past several years in which he and Autrey attempted to identify homes with large stores of cash, impersonated police officers or furniture deliverymen in order to gain entry, and then subdued the occupants by threatening them with firearms and restraining them with zip-ties. The police provided Autrey with a recording device, and he recorded several incriminating conversations he had with Ross while they were planning their next home invasion. The police photographed these meetings from concealed positions.

On June 16, 2008, the night of the planned home invasion, the police arrested the four conspirators when they gathered in the parking lot of a Wal-Mart to drive to the residence they had decided to rob. The officers found a locked suitcase inside the trunk of Ross's vehicle, which they unlocked with a key found on Ross's key ring. Inside were a bag containing a Samozaryadniy Karabin sistemi Simonova (SKS) rifle and a backpack containing a .40 caliber pistol. They also found a Walther P22 pistol inside a laptop case like one Ross had been seen carrying on previous occasions. Another .40 caliber pistol was found in the front seat of the car on the passenger's side. All of the firearms' magazines were loaded. However, Ross's fingerprints were not found on any of the guns.

On June 17, 2008, the police executed a search warrant on Stephen's residence after learning that Ross had lived there prior to the June 16 robbery. The search produced two shotguns that had been stolen during a home invasion on May 15, 2008. On the following day, Autrey told the police that the conspirators had stored more stolen property in a garage in Irving, Texas. The address of the garage was found in Ross's wallet. When the police searched the garage, they found another SKS rifle and several handguns.

Ross's trial began on November 18, 2008. During voir dire, Panelists 14 and 41 expressed doubt that they could hear the case impartially, and the Government moved to strike them for cause. Ross objected, but the district court overruled his objection and excused those panelists. The Government then used a peremptory strike to remove Panelist 10, who was one of two black panelists. Ross objected and demanded an explanation for the government's reason under *Batson v. Kentucky*, 106 S.Ct. 1712 (1986). The district court asked Tracey Batson, the prosecutor, to explain her reason for striking Panelist 10. Batson explained that Panelist 10 had fallen asleep during voir dire, had previously sat on a criminal hung jury, and had given her a "mean" look. The court found that these reasons were not discriminatory and overruled the objection.

During the trial, the Government presented testimony from all of Ross's known co-conspirators. It also introduced the tapes of the conversations that Autrey had secretly recorded, in which a voice identified as Ross's could be heard planning a home invasion. The proprietor of a military surplus store testified that Ross had bought several firearms accessories there that were later found with the guns when Ross was arrested. The proprietor also testified that Ross's wife had purchased a Walter P22 from his store. A

3

Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) agent testified that all of the guns Ross was accused of possessing listed in count one and one of those listed in count two had moved in and affected interstate commerce. Finally, two of Ross's victims testified that the two shotguns found in Stephen's house had been stolen from their home.

The jury found Ross guilty on both counts of being a felon in possession of firearms. At sentencing, Ross for the first time moved to suppress the evidence that was seized during the search of his car. He also objected to several recommendations in his Pre-Sentence Report (PSR), arguing that his sentence should not be enhanced for being the leader of the planned robbery, for possessing guns that were not listed in his indictment, or for planning to use the firearms to commit the robbery he allegedly had been planning. The district court overruled his objections and adopted the PSR's recommendations. Ross timely filed a notice of appeal.

## DISCUSSION

Ross argues that the district court made seven errors. First, he argues that he is entitled to a new trial, because the district court allowed the Government to exercise a peremptory challenge against a black juror on the basis of her race, in violation of his right to due process. Second, he argues that he is entitled to a new trial because the district court erred in excusing two jurors for cause when no cause existed. Third, he argues that his conviction should be reversed, because the district court erred in denying his motion for acquittal. His fourth, fifth, and sixth assignments of error concern the district court's calculation of his sentence pursuant to the United States Sentencing Commission's *Guidelines Manual* (Sentencing Guidelines or Guidelines). Seventh, he argues that the district court erred by denying as untimely his motion to suppress evidence. We discuss each issue in turn,

4

along with its standard of review.

## I.  The Peremptory Challenge

Ross argues that the district court erred by overruling his *Batson* objection to the Government's use of a peremptory challenge against Panelist 10 at the conclusion of voir dire.

### A.  Standard of Review

We review a district court's ruling on a *Batson* objection for clear error. *United States v. Davis*, 393 F.3d 540, 544 (5th Cir. 2004).  The district court's determination is entitled to great deference, because findings in this context largely turn on an evaluation of the credibility or demeanor of the attorney who exercises the peremptory challenge in question.  *United States v. Bentley-Smith*, 2 F.3d 1368, 1372–73 (5th Cir. 1993) (citing *Batson v. Kentucky*, 47 U.S. 79, 98 n.21, 106 S.Ct. 1712, 1724 n.21 (1986), and *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 1869 (1991) (plurality opinion)).

### B.  The Challenge

We follow a three-step process in determining whether or not peremptory strikes have been applied in a discriminatory manner.  *Bentley-Smith*, 2 F.3d at 1373.  First, the party making the *Batson* objection must make a prima facie showing that the peremptory challenge was exercised on the basis of race.  *Id*.  Second, if this showing is made, the burden shifts to the party accused of discrimination to articulate a race-neutral reason for its use of the peremptory challenge.  *Id*.  Finally, the trial court must determine whether or not the party making the *Batson* objection has carried its burden of proving purposeful discrimination.  *Id*.  The shifting burden in this three-part test is a burden of production only.  *Id*.  The ultimate burden of persuasion always lies with the party making the *Batson* objection.

Batson stated that she exercised the Government's peremptory challenge, because Panelist 10 had fallen asleep during voir dire, had previously sat on a criminal hung jury, and had given her a mean look. Ross argues that these assertions were not supported by the record and were therefore legally insufficient to establish a race-neutral reason for dismissing Panelist 10. He relies on the panel opinion of the Eighth Circuit in *United States v. Wilson*, 853 F.2d 606, 610–11 (8th Cir.), *vacated*, 861 F.2d 514 (8th Cir. 1988) (en banc), which held that peremptory challenges violated *Batson* where they were not supported by the trial record and thus could not be verified. This opinion was vacated, and the en banc court reached the same result under different reasoning in *United States v. Wilson*, 884 F.2d 1121 (8th Cir. 1989) (en banc). Nevertheless, Ross's argument receives some legal support from the Supreme Court's opinion in *Snyder v. Louisiana*, 128 S.Ct. 1203, 1209 (2008). In *Snyder*, the prosecution exercised a peremptory challenge against a panelist in part because he had seemed unusually nervous during voir dire. *Id.* The Court found that a *Batson* violation had occurred because the record refuted the non-demeanor-based ground for the strike, and the record did not reflect that the trial court had credited the prosecution's demeanor-based rationale. *See id. But see Thayler v. Haynes*, No. 09-273, 559 U.S. ___, slip op. at *6-7 (2010) (per curiam) (holding that *Snyder* "do[es] not suggest that, in the absence of a personal recollection of the juror's demeanor, the judge could not have accepted the prosecution's [demeanor-based] explanation" for a peremptory strike).

The record in Ross's case contains no such flaws. Batson stated that her reasons for challenging Panelist 10 were that she was inattentive, had served on a criminal hung jury, and had given Batson a mean look. The

6

district court confirmed on the record that Panelist 10 "did say she was a juror from a hung jury, and she didn't seem particularly attentive . . . ." The district court stated that it had not seen Panelist 10 give Batson any mean looks, but that it did not believe, based on its observation of Batson that she was attempting to exclude Panelist 10 based on her race. Therefore, the record supports the district court's determination that Batson's reasons for excluding Panelist 10 were race-neutral and that Ross did not satisfy his burden of establishing purposeful discrimination. Accordingly, we hold that the district court did not clearly err by denying Ross's *Batson* objection.

## II. Challenges for Cause

Ross's second assignment of error is that the district court violated his Sixth Amendment right to a fair trial by improperly excusing Panelists 14 and 41 for cause. He argues that, although both initially indicated during voir dire that they had doubts about their ability to hear the case impartially, he succeeded in rehabilitating them through further questioning. The Government contends that the record supports the district court's decision to exclude both panelists.

### A. Standard of Review

We review a district court's ruling on a prospective juror's impartiality for manifest abuse of discretion. *United States v. Wharton*, 320 F.3d 526, 535 (5th Cir. 2003). The district court should excuse a panelist for cause if his "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* (quoting *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 105 S.Ct. 844, 857 (1985))) (internal quotation marks omitted).

### B. The Challenges

A defendant who appeals a district court's decision to exclude a

potential juror for cause cannot obtain reversal of his conviction unless he shows that the jury actually selected was biased. *United States v. Hickman*, 331 F.3d 439, 445 (5th Cir. 2003). Ross has not alleged, much less shown, that the jury ultimately empaneled in his case was biased. Therefore, we decline to find any reversible error with respect to this issue. *See id*. Moreover, and in any event, we find no manifest abuse of discretion in the district court's rulings on these challenges.

## III. Sufficiency of the Evidence

In his third assignment of error, Ross argues that the district court erred by denying his motion for a judgment of acquittal. He argues that this motion should have been granted, because the evidence was insufficient on both counts to sustain the jury's guilty verdict. The first count of Ross's indictment charged him with possession of "one or more of" the weapons recovered from his vehicle immediately after his arrest. The second count of his indictment charged him with possession of "one or more of" the weapons recovered from Stephen's house on the following day.

### A. Standard of Review

We review the denial of a motion to acquit de novo. *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006). "The jury's verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt." *Id*. (quoting *United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001)). The reviewing court makes all reasonable inferences and credibility choices in favor of the jury verdict. *United States v. Deville*, 278 F.3d 500, 505 (5th Cir. 2002).

### B. Felon in Possession

In order to convict a defendant of having been a felon in possession of a

8

firearm in violation of 18 U.S.C. § 922(g)(1),[1] the government must prove beyond a reasonable doubt (1) that the defendant was a convicted felon, (2) that he possessed a firearm, and (3) that the firearm had traveled in and affected interstate commerce. *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005). *See* 18 U.S.C.A. § 922(g)(1) (West 2000). Ross stipulated to the first element, and the Government established the third element through the uncontested testimony of its expert witness from the BATFE. Thus, the second element, possession, was the only disputed element at trial.

Possession can be established by (1) actual, physical possession of the firearm, (2) sole control and occupancy of a place where a firearm is found, or (3) joint occupancy of a place where a firearm is found, combined with some evidence of the defendant's access to and knowledge of the firearm. *United States v. Anderson*, 559 F.3d 348, 353 (5th Cir.), *cert. denied*, 129 S.Ct. 2814 (2009). Ross's only argument on this point is that a reasonable trier of fact could not have concluded beyond a reasonable doubt that he possessed any of the firearms described in either count of his indictment, because there was no physical evidence linking him to these firearms. He asserts that the only link was established by the testimony of his co-conspirators.

Even if it were true that the only evidence linking Ross to the firearms

---

[1] 18 U.S.C. § 922 provides, in relevant part:
"**§ 922.  Unlawful Acts**
    * * *
    **(g)**  It shall be unlawful for any person—
        **(1)**  who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
        * * *
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."
18 U.S.C.A. § 922(g)(1) (West 2000) (emphasis in original).

described in his indictment was the testimony of his co-conspirators,[2] we would not be able to find that the district court erred by denying his motion to acquit.  Once a district court has charged the jury adequately with respect to accomplice testimony, the jury may base its conviction entirely on the testimony of accomplices.  *United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir.), *cert. denied*, 129 S.Ct. 269 (2008); *Peel v. United States*, 316 F.2d 907, 911 (5th Cir. 1963).  When reviewing a district court's denial of a motion to acquit, we make all credibility choices in favor of the jury verdict.  *Deville*, 278 F.3d at 505.  Ross has not alleged any defect in the district court's jury charge regarding the accomplice testimony that was heard in his case or otherwise.  No error has been shown in the district court's denial of Ross's motion to acquit.

## IV.  Sentencing Guidelines Issues

Ross's fourth assignment of error is that the district court improperly enhanced his sentence by including firearms found in the search of the garage in Irving in its calculation of his offense level pursuant to the Sentencing Guidelines, even though he was not charged with the possession of these guns in either count of his indictment.  His fifth assignment of error is that the district court improperly enhanced his sentence four levels under the Guidelines based on its finding that he had intended to use the firearms he was convicted of possessing in connection with another felony offense.  And in his sixth assignment of error, he argues that the district court improperly applied a two-level enhancement pursuant to the Sentencing Guidelines on

---

[2] And the record indicates that this assertion is not true.  The police found the guns described in the first count of Ross's indictment hidden in the trunk of Ross's car, and at least one of these guns was inside a locked suitcase, the key to which was found on Ross's key ring.  Furthermore, the proprietor of the military surplus store testified that Ross had purchased several accessories from the store that were found with the firearms.

the ground that he had been a leader of criminal activity.

## A. Standard of Review

A district court's application of the Sentencing Guidelines is reviewed de novo, and its findings of fact are reviewed for clear error. *United States v. Brummett*, 355 F.3d 343, 344 (5th Cir. 2003) (per curiam). "A district court may consider non-adjudicated offenses (offenses for which the defendant has neither been charged nor convicted) . . . provided they constitute 'relevant conduct' under U.S.S.G. § 1B1.3." *Id*. A district court's determination of relevant conduct is reviewed for clear error. *Id*.

## B. Sentence Enhancement for Firearms Not Charged

In calculating Ross's offense level under § 2K2.1[3] of the Guidelines, the district court included five firearms found in the garage in Irving in its tally of the number of firearms that had been involved in Ross's possession offense, concluding that he had possessed a total of eleven firearms. Ross argues that this was improper, because he was not charged with possession of the

---

[3] The United States Sentencing Commission, *Guidelines Manual*, §2K2.1 (Nov. 2008), provides, in relevant part:

"**§2K2.1.   Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition**

(a)   Base Offense Level (Apply the Greatest):
\* \* \*

    (2)   **24**, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;
\* \* \*

(b)   Specific Offense Characteristics
    (1)   If the offense involved three or more firearms, increase as follows:

| Number of Firearms | Increase in Level |
|---|---|
| (A)   3-7 | add **2** |
| (B)   8-24 | add **4**." |

USSG §2K2.1 (emphasis in original).

firearms that were found in Irving.

A district court may consider non-adjudicated offenses as "relevant conduct" under § 1B1.3 of the Guidelines.[4] *Brummett*, 355 F.3d at 344. Relevant conduct includes offenses that are part of the same course of conduct or part of the same common scheme or plan as the offense of conviction. *Id*. Two or more offenses are part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." USSG §1B1.3, comment. (n.9(A)). "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." USSG § 1B1.3, comment. (n.9(B)).

In *United States v. Brummett*, we determined that a district court had not erred in calculating a defendant's offense level for the offense of being a

---

[4] USSG §1B1.3 provides, in relevant part:

"**§1B1.3.   Relevant Conduct (Factors that Determine the Guideline Range)**

    (a)   Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (I) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter three, shall be determined on the basis of the following:

       (1)  (A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . .

           * * *

           that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . ."

USSG §1B1.3(a)(1) (emphasis in original).

12

felon in possession of a firearm where it had counted firearms he had not been indicted for possessing. *Brummett*, 355 F.3d at 344–45. The district court included firearms that had been discovered in the nine months following the possession for which the defendant was indicted as relevant conduct in its calculation of his sentence. *Id.* at 344. We held that, despite the amount of time that had elapsed between the offenses, they were part of the same ongoing series of offenses and thus were relevant conduct. *Id.* at 345.

The amount of time that elapsed between the discovery of the last of the firearms which Ross was indicted for possessing and the discovery of the firearms in Irving was a single day. Ross concedes that *Brummett* controls the outcome of this issue if it is still good law. However, he argues that *Brummett* was abrogated by the Supreme Court in *Blakely v. Washington*, 124 S.Ct. 2531 (2004), and *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000).

In *Blakely*, the Court held that a state court had violated a defendant's Sixth Amendment rights by departing from the maximum sentence prescribed by a state sentencing regime and enhancing the defendant's sentence based on facts to which he had not pleaded guilty and which had not been found by a jury. 124 S.Ct. at 2536 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (quoting *Apprendi*, 120 S.Ct. at 2362–63)). At the time *Blakely* was decided, there was some concern that it would prevent judges from applying enhancements under the federal Sentencing Guidelines, since the Guidelines, like the state sentencing regime reviewed in *Blakely*, were mandatory. *See* 124 S.Ct. at 2538 n.9. *See also id.* at 2548–50

13

(O'Connor, J., dissenting). However, the Court's subsequent decision in *United States v. Booker*, 125 S.Ct. 738 (2005), which held that the Guidelines were not mandatory, provided grounds for distinguishing *Blakely*. *See United States v. Rita*, 127 S.Ct. 2456, 2465–67 (2007). In 2007, in *Rita*, the Court confirmed that *Blakely* and *Apprendi* did not prevent district courts from enhancing sentences under the Guidelines. *Rita*, 127 S.Ct. at 2465–66.

Therefore, *Brummett* remains good law, and the district court did not err by including the firearms found in Irving in its calculation of Ross's offense level under the Guidelines. *See Rita*, 127 S.Ct. at 2465–66; *Brummett*, 355 F.3d at 345.

## C. Sentence Enhancement for Using the Firearms to Commit Another Felony Offense

Ross's fifth assignment of error is that the district court improperly enhanced his sentence four levels under § 2K2.1(b)(6)[5] of the Sentencing Guidelines based on its finding that he had intended to use the firearms he was charged with possessing in connection with another felony offense. Specifically, he argues that the government did not introduce sufficient

---

[5] Section 2K2.1 provides, in relevant part:

"**§2K2.1.   Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition**
* * *

(b)   Specific Offense Characteristics
* * *

(6)   If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels. If the resulting offense is less than level **18**, increase to level **18**."

USSG §2K2.1(b)(6) (emphasis in original).

14

evidence that he intended to commit another felony offense for the district court to make this finding and enhance his sentence.

The district court need only find facts relevant to its application of the Sentencing Guidelines by a preponderance of the evidence. *United States v. Lewis*, 476 F.3d 369, 389 (5th Cir. 2007). The findings of fact made by the district court at sentencing are reviewed for clear error. *Brummett*, 355 F.3d at 344. The record contains overwhelming evidence that Ross was planning to use the firearms he was convicted of possessing to commit another felony offense. In addition to the physical evidence recovered at the scene of his arrest that suggested he was preparing to commit a home invasion, Autrey's tape recording of Ross planning the robbery recorded Ross stating that he planned to bring his SKS:

> "ROSS: You be there at 8:30. I pick y'all up at 8:35, then we going to ride through and get in position.
> AUTREY: Okay.
> AUTREY: Yeah. Wait. So we going – you – you going to bring your AK,[6] you not going to bring your –
> ROSS: Yeah, I bring it."

Accordingly, we find that the district court had ample evidence upon which it based its enhancement under §2K2.1(b)(6) of the Guidelines.

---

[6] An earlier portion of the recording reveals that Ross had confused his SKS rifle for an AK-47, due to the similar appearance of the two weapons:
> "ROSS: Damn. (Inaudible) But the bitch – the drum [magazine] ain't fitting on the bitch. So now I'm starting to wonder, is the bitch an AK or a SK.
> * * *
> AUTREY: You want me to bring my AK?
> ROSS: Yeah, I want – I just want to see if the drum [magazine] will fit yours.
> AUTREY: Okay.
> ROSS: Because if the drum will fit yours and don't fit mine, that tells me mine is an SK, not an AK. Because a lot of the configurations are the same, but the load magazine is different."

**D. Enhancement for Taking a Leadership Role in an Uncharged Offense**

Ross's sixth assignment of error is that the district court improperly applied a two-level enhancement pursuant to § 3B1.1[7] of the Sentencing Guidelines on the ground that he had been a leader of criminal activity. Ross argues that it was improper for the district court to enhance his sentence for assuming a leadership role in the planned robbery, because he was ultimately charged with being a felon in possession, not for any offense involving the planning of the robbery. He then argues that, even if it might be permissible to enhance a defendant's sentence based on a leadership role in an uncharged offense, there was insufficient evidence for the district court to do so in his case. Both of these arguments lack merit.

The "Introductory Commentary" to § 3B1.1 makes it clear that leadership roles in uncharged offenses may be used to enhance a defendant's sentence:

> "This Part provides adjustments to the offense level based upon the role the defendant played in committing the offense. The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of §1B1.3 (Relevant Conduct) . . . and not solely on the basis of elements and acts cited in the count of conviction." USSG Ch.3, Pt.B, intro. comment (emphasis in original).

Relevant conduct includes offenses that are part of the same course of conduct

---

[7] Section 3B1.1 provides, in relevant part:

"**§ 3B1.1. Aggravating Role**

Based on the defendant's role in the offense, increase the offense level as follows:

* * *

(c)    If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels."

USSG §3B1.1(c) (emphasis in original).

or part of the same common scheme or plan as the offense of conviction. *Brummett*, 355 F.3d at 344. Two or more offenses are part of a common scheme or plan when they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." USSG §1B1.3, comment. (n.9(A)). Ross's possession of firearms was substantially connected to the planned home invasion, because the two offenses shared a common purpose, to rob the home's occupants of their valuables. Thus, the planned robbery was relevant conduct, and the district court did not err by enhancing Ross's sentence for his leadership role in it.

Ross's contention that the district court lacked sufficient evidence upon which it could conclude that Ross was a leader of the planned robbery is also without merit. Whether or not a defendant was a leader of criminal activity is a fact finding, which we review for clear error. *Brummett*, 355 F.3d at 344. The district court must find facts relevant to its application of the Sentencing Guidelines by a preponderance of the evidence. *Lewis*, 476 F.3d at 389. The transcript of the recorded conversation between Autrey and Ross that was played at trial provided ample evidence upon which the court could find that Ross was a leader of the planned robbery. Therefore, the district court did not err by enhancing Ross's sentence based on its finding that he had been a leader in the planned robbery.

## V. Challenge to the Warrantless Search and Seizure

Ross's seventh assignment of error is that the district court improperly denied his motion to suppress the evidentiary fruits of the search and seizure of his vehicle. He filed this motion *pro se* at sentencing, and it was deemed untimely by the district court.

17

## A.  Standard of Review

In reviewing a district court's denial of a motion to suppress, we review its factual findings for clear error and its conclusions of law de novo.  *United States v. Fields*, 72 F.3d 1200, 1212 (5th Cir. 1996).

## B.  Warrantless Search and Seizure

Rule 12[8] of the Federal Rules of Criminal Procedure requires a defendant to move to suppress evidence before trial.  Fed. R. Crim. P. 12(b)(3)(C).  A defendant who fails to adhere to this requirement waives the issue.  Fed. R. Crim. P. 12(e).  *See also United States v. Chaves-Valencia*, 116 F.3d 127, 129 (5th Cir. 1997) ("[T]he failure to raise a suppression issue at trial forecloses a defendant from raising the issue for the first time on appeal.").  Ross admits that his suppression issue is foreclosed by law, but asserts that he presents his argument on the issue anyway to preserve it for "FUTURE REVIEW."

---

[8] Rule 12 provides, in relevant part:
"**Rule 12.  Pleadings and Motions**
   * * *
   **(b) Pretrial Motions.**
      **(3) Motions That Must Be Made Before Trial.**  The following must be raised before trial:
         * * *
         **(C)** a motion to suppress evidence;
         * * *
   **(c) Motion Deadline.**  The court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions and may also schedule a motion hearing.
   * * *
   **(e) Waiver of a Defense, Objection, or Request.**  A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief from the waiver."
Fed R. Crim. P. 12 (West 2008) (emphasis in original).

Frankly, we are unable to determine what exactly Ross thinks he is preserving. He begins his discussion of this issue by stating that the search in which the weapons were found was an inventory search of his vehicle.[9] He then states that a properly performed inventory search is an exception to the general rule that all searches must be performed pursuant to a warrant. He says that inventory searches are proper when law enforcement officers follow a standard procedure. One would then expect him to argue that the particular search that discovered the firearms in Ross's vehicle did not follow a standard procedure. But he does not do this. Instead, he concludes the discussion of this issue by stating that, "[d]uring the suppression hearing,[10] there was testimony that the search was conducted pursuant to the policies of the Denton County Sheriff's Department . . . . It cannot be said that the inventory search was unreasonable due to law enforcement's failure to follow standard procedures in conducting the inventory." This is the end of his discussion of this issue. Thus, his own brief fails to identify a single argument upon which his motion to suppress could have been granted if it had been raised timely.

Given that Ross's suppression arguments were waived, and given that even if they had not been waived, his briefing on them is entirely inadequate, we hold that Ross has established no ground for reversal in this connection.

---

[9] The Government argues that the search was not an inventory search, but was instead a search pursuant to the "automobile exception" to the Fourth Amendment warrant requirement. *See generally*, *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) ("The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband."). We need not reach this argument, as we find that Ross's argument was waived and is inadequately briefed.

[10] There was no suppression hearing as such, but this apparently refers to testimony at sentencing.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.